Case 13-1247 Stephen Scozzari v. City of Clare, et al. Oral argument, 15 minutes per side. Ms. Kavanaugh for the appellants. Good morning, Your Honors. Megan Kavanaugh, appearing on behalf of Dwayne Medzianowski and Jeremy McGraw. If I may, I'd like to reserve three minutes of my time for rebuttal. This is the third time that we're here in front of this court on this case. The second time that we're asking the court to look at the qualified immunity issue with respect to the 14th Amendment denial of medical needs. And, I'm sure you're well aware, Judge White, you wrote the opinion on the summary judgment motion that found that there was a question of fact that sent it back and said plaintiff gets an opportunity to prove at trial that the officers were deliberate in difference and gave certain guidances to what that evidence may be to establish that. And so I think the critical issue obviously here in this appeal is why is a different result warranted now as opposed to your prior decision. And why is the jury's finding of no 14th Amendment violation able to be sustained regardless of the proximate cause instructional issue, which was the basis of why Judge Ludington ordered a new trial on it. And I think what the answer is to that is that there are some critical differences in the factual record that was before the court at the summary judgment stage and the facts that were presented to the jury and in support of or upon which they based their finding of no 14th Amendment violation. And a couple of them, I mean, there are differences and there are a couple that are critical. I think that when you look at the summary judgment opinion, Judge White, that this time period that was giving plaintiff the benefit of is 12 minutes. The trial record time period at best, and I think even plaintiff agrees with this in his brief, at best is 9 minutes and 40 seconds or just under 10 minutes between the time, best case scenario, between the time that the officers shot Mr. Scazzari and the time that they call MMR on site to treat him. And, of course, in that time period, there is a 6 to 7 minutes taking for MMR to get dispatched and get to the scene. So that is a difference, and here's where I think... Counsel, just a second. Sure. There's a lot of time here that we might get into, but I just want to be clear because you had said even they only claim 9 minutes. My reading of the record is you have the 11-26-09 or 26 minutes and 9 seconds when the dispatch says shot, fired, suspects down, right? Correct. That's when dispatch recorded that, yes. And it's at 34 minutes and 50 seconds that Medzianowski says send in the alpha unit, but we know it was staged arguably for a couple of minutes before that. That's why I thought their best claim was about 6 minutes between the sending of the first message and the EMTs arriving on the scene. Yeah, I think taking the facts in light most favorable to plaintiff and for this jurisdictional qualified immunity analysis, even giving plaintiff the benefit that, based on Officer McGraw's report, that he recollected that it took Medzianowski maybe up to a minute after shots were fired to call. So I put it at the absolute earliest time that Mr. Scazzari could have been shot would have been one minute prior to the 11-26-09. So that gives an additional minute. And then, as you indicate, the MMR's report indicates that they were staged at 11-33. Dispatch recorded at 11-34-50 seconds that send in the alpha unit. There's also this 32 minutes and 23 seconds 501 ENRT to stage, which I take it there's some controversy about what that meant, but might mean that that's about when they actually got there, which would be congruent or close to congruent with the 11-33 on the questionable MMR report. Right, as confirmed by the MMR. I just want to be clear on one other thing. Sure. The only thing before us on appeal is the denial of qualified immunity. The merits of his granting a new trial is not before us here. Correct, correct. We had done a petition for permission on the instructional issue at the time that we briefed. It was pending, but that had been denied by the court. So the question is, even assuming the instructional error, were the officers entitled to qualified immunity on the denial of medical needs? And it's our position that on the record at trial, despite having perhaps been given the opportunity to go back from the summary judgment stage and establish a different case, one that may have supported the prior court's decision of finding a 14th Amendment violation, that that record submitted was not. And here's where I think, as I indicated, is the crucial difference. In addition to the time period, is that part of, at least as I read it, and I think that this is a correct reading, but of the prior opinion, that part of the reason of finding or of saying that there's a question of fact and that the plaintiff should be able to go back and try and prove the case in front of a jury, was some evidence in the summary judgment record that Mr. Scazzari was not armed at the time that he was shot. And that part of this time, this time period, whatever it may be, was used to call out witnesses not for a legitimate purpose of securing eyewitness identification of weapons in his hands before those weapons were removed, but to go into the cabin, get weapons, and plant them on Mr. Scazzari and then hence have the witnesses come out and take a look at that. And there was evidence in the summary judgment record that if that could be established at trial, then perhaps they would have been able to establish a deliberate indifference, that that kind of activity, no legitimate reason for calling witnesses out, no legitimate reason for having people staged, having MMR staged for that, could be sustained. And as we've argued in our briefing, that the jury's finding of no Fourth Amendment violation, that the officer's action in using deadly force was objectively reasonable, I believe precludes any conclusion that the calling out of witnesses or that time or what they were doing precludes plaintiff from relying on the fact that, well, they may have been using that time to plant weapons. Let me ask you about that because you've got, they shoot him, and there's at least the argument that he had a hatchet and a knife. But then after he's down, they seem to at least allegedly find some other weapon, and that seems to be independent of whether they were justified in shooting him. If I take their side, and I'll ask Mr. Davis as well, the time during which there could be deliberate indifference essentially is the first minute between shooting him and reporting it. The time that you keep them away by staging them rather than bringing them in when you know that he's dead or dying or at least down, and you've had five or six minutes, and then when you interrupt to look for more weapons, that each of those three might be times in which that was unnecessary. Is that a kind of fair statement of it? I think that is a fair statement, and I think that that is what the district court concluded. I think plaintiffs would like to look at the whole block of time. I think that you do have to look at that initial period, and obviously the waiting a minute to call, as we've established, it's not clearly established that that would be violative. With respect to the checking for weapons, and here's something that I think is important, and it is in the record, is that it was a, based on the deposition testimony and the trial testimony of Winnie Bryans, who was the paramedic who was on scene, was that it was a different agency. It was a Michigan State police officer, to her recollection, that after MMR, after the paramedics had gotten access and began assessing or attempting to treat Mr. Scazzari, a MSP officer asked, has his body been checked for weapons, which they instinctively then jumped off. I'm sorry, what did you say? The MMT, Ms. Bryans testified that that's instinctively, I back off if there's even a question of it. Was it just some Michigan State police different from Medzanowski? Yeah, there is no evidence that it was. Well, no, at the time of shots fired, Medzanowski had called for an outside agency to come in. Michigan State Police, Clare County came in. Our officers were Clare City. So there were Michigan State police officers there at the time that the MMR was there. And so the question is that even had, as we've argued in our brief, I think the failing to thoroughly check him enough to find these weapons is, as we've argued, is negligence at best, I don't think. And I think that this case, this court's authority supports that, that it rises to the level of deliberate indifference. But even assuming that they had checked him, I think if you review Officer McGraw's testimony, it's his testimony that he did, in fact, check, checked. And he thought he removed them, but he did in removing the obvious weapons from his hand, rolling them over, handcuffing him and that, and that he did check, is that even assuming that they had done that, that wouldn't necessarily have prevented a Michigan State police officer from coming up and saying, hey, has he been checked, and the resulting, you know, whatever delay that is. We don't know how long and when. The delay you're saying is adventitious. It's not chargeable to Clare. Correct, correct. And even if, you know, and again, when you look at what is the, even if you could charge it to these two particular officers you're looking at, is that a sufficiently culpable state of mind, deliberate indifference, to know that by not doing the most thorough job that I can do in these intervening six minutes or what have you that I know that somebody else is going to wonder whether or not we have actually checked that body. They're going to step in. They're going to pull off. That's going to further delay some treatment. Did Medzanowski or any of these other people testify about the state policemen coming in, or is it only based on Brian's testimony? It's only based on Brian's testimony that at some point, and how long of a delay that caused is not a matter of the record, and when in the course of time that established. And just, I would sum up that again, that these differences are critical not only, I think, to the establishment of the constitutional violation, but I think they also go to the qualified immunity analysis in what every reasonable officer would have known in September of 2007. Was it beyond debate that this conduct that they engaged in, was it beyond debate that in doing so in the situation of this case, that it would have been constitutionally violative? And so it's our position that based on the trial record, and distinct from the summary judgment, prior opinion in this, that the officers were entitled to qualified immunity on the 14th Amendment claim as well, and obviating the need for a retrial. And if I may, I will. Thank you, counsel. Thank you. If it pleases the court, Hugh Davis for the plaintiff. This argument is based on a fallacy. I didn't lose that claim because the jury didn't believe the witnesses. I lost the claim because Judge Ludington decided to instruct the jury. I had to prove that the delay caused the death. And even though it's not briefed, if we give you the transcript of the closing argument, I just straight up told the jury, I can't prove that. And therefore the idea that somehow parsing the evidence of the five independent witnesses who talked about staging the scene and the delay simply did not play into that decision. The issue before us is whether there should have been a grant of qualified immunity. Regardless of why the jury came to the conclusion they did, the question before us is, I think, whether on the evidence, now all the evidence which is before us, there should have been qualified immunity. Except that we didn't brief all the evidence because that wasn't the point. That was done in the district court. The district court heard the trial, made the decision, made specific findings, basically found a 12-minute delay, basically found that the officers had engaged in not securing the scene, but in fact bringing witnesses onto the scene and polluting the scene, displaying the body, displaying the weapons, and doing things which literally have nothing to do with the duty to provide immediate care to a fellow who is laying face down in a puddle of blood and gurgling and not moving. Counsel, when you say he found that, is that in his ruling granting a new trial? Or what piece of paper are you saying when he found that? Or are you harking back to the earlier? I mean, I think the answer might be for the new trial, but I just want to be clear. Your Honor, it's document 225, filed January 28th, and it's opinion and order denying defendant's motion for relief and denying plaintiff's renewed motion for new trial. We ask. That's another appeal which is still coming here. But that was the document. That's after the trial? That's after the trial. And so the idea that somehow or another Jeff Richardson, Jeff Morgan II, Jeff Morgan's girlfriend, Jeff Morgan's brother, and a lady who contacted us after the first appeal and came from Oregon to testify as to what she observed about the officers entering the cabin and bringing out weapons, that's all a part of the record. It just wasn't a part of this appeal because it wasn't framed that way. Counsel, the 12 minutes you referred to, is it fair to say that that's the time a minute before the 2609 entry and the 3710 when we know that the MMR is treating Scazzari? Is that a fair way to get that 12 minutes? I think it extends back a minute before that when he first called in, shooting but didn't call for medical records. Well, the shots fired is at 2609, and I was giving you a minute before that because there was some testimony that he didn't do that for a minute. So that gets you at 25 of the time of the shooting and 37 when Kennedy says the MMR is still treating Scazzari. Is that fair? Yes, sir. And then from your point of view, what's the quickest it could have been if they had done everything right? I mean, assuming that they could shoot him, which is separate, but assuming that the shooting occurs, what's the quickest from your view that without deliberate indifference MMR could have been treating him? The hospital is one mile to the south. The emergency medical service headquarters is one mile to the north. Had they called immediately, checked him out, secured the scene, the EMS people could have been treating Scazzari within four minutes. Thank you, counsel. So that, in my view, in spite of all the talk about protocols and all the talk about priorities and choosing between alternative law enforcement objectives, once Scazzari was down on his face, bleeding to death, there was one law enforcement objective, ensure the security of the area, check him out while the EMS came. You don't have to stage them off the scene. The idea that there's some iron protocol that they always have to be staged off the scene depends on the time, place, and circumstance, including, Your Honor, in the case that you just decided, with Pierce v. Springfield. That's the guy who shot himself, right? The guy shot himself. He's sitting there. He's alert. He's awake. The first thing they did was report to the supervisor. EMS was on its way within a minute. They were there within five minutes. There was no staging off the scene there. He was on his way to treatment within another five minutes. It's a different case. But this hocus-pocus about some magic protocol where everybody goes through a dance, depending on, regardless of what the actual situation is, the people who saw what happened there were horrified. And they said so. And the officers, what protocol is it that requires independent witnesses to view the body and the weapons? What protocol is it that requires you to find witnesses before you render medical treatment? Those protocols don't exist. And the idea that, like the, you know, maybe they made bad choices and they didn't do it the way that they could have, citing Huntley-Sycamore School District, that was a state-created danger case of a teacher who was attacked by a student. It's different than the duty established long ago to render medical aid that's completely obvious to everybody as rapidly as possible, consistent with security. And the security issues here, Schizari wasn't fighting, he wasn't going anywhere, he wasn't talking to them, he wasn't getting up with a knife in his hand to threaten them. It's just different than Pierce v. Springfield. He's lying there dying and they're doing something else.  And the idea that, somehow or another, the first decision on this qualified immunity issue, when we were here back in, I think, 2012, is now undermined by the trial testimony, were it to be briefed, in my view, it wouldn't be undermined, it would be strengthened, because there were still witnesses that we hadn't found yet that weren't a part of that record. But now are. And so, to me, it's an attempt to simply deflect in any direction possible, like the MSP people who got there. The first person who got there was a deputy who drove from 12 miles away at the county seat. It's true that the MSP people got there fairly shortly, and it's true, like with any crime scene investigation, they entered that cabin at some point and they brought weapons out. And Winnie Bryans, who happened to hear this dispatch and went there voluntarily, wasn't dispatched there and happened to be there when the state police did that. It is a meaningless fact. Of course they went in, of course they came out, of course they gathered weapons. The question is when, and it was well after the initial delay in the treatment. I can go on, but this has been briefed so much, and the timeline has been analyzed so much, and the law is so clear, I just think that this particular appeal is a misdirection. We still have the underlying case, where ultimately after the jury said it was hung twice and Judge Ludington kept narrowing and narrowing and narrowing the Fourth Amendment sequence and what the jury could consider as a part of the entire transaction with regard to the reasonableness of the officer's actions, he finally said, I'm going to give them a note saying they don't consider anything except the minute that they were at the door before Scosari came out with the knife. So all they're going to consider, all the provocation and all the needless chasing down and forcing out of his home of this recluse, is not going to be relevant to their decision. I said, Judge, it's a directed verdict. He said, I'm going to do it. Nine minutes later they came back with no cause of action. That's the real issue in this case, which will be coming back up here if we can ever get this out of the way so that it's right for us to consider the segmentation arguments which have gone back and forth in police shooting cases in this circuit and about which we've been fighting about in the Cleveland cases and Kirby v. Duva and whatever. This is a sidelight and a diversion and I don't think that there's any reason to change anybody's mind about what this court did the first time or what Judge Ludington did after he heard the trial, got extensive post-trial briefings, made detailed decisions, and decided that a reasonable jury could decide that these guys, whether they were in shock over what had happened, for whatever reason, they didn't reasonably see to Mr. Scosari's medical treatment. Thank you. Thank you, counsel. Rebuttal? I will be brief. I think I obviously take issue with Mr. Davis' construction of what issues are on appeal or what has been briefed or what is not. I think what is clear is that we have argued, regardless of the instructional error, could the jury's verdict on the 14th Amendment of finding no liability, were the officers entitled to qualified immunity on that? The fact that we could have come up with additional witnesses or we could have tried a different case, they didn't. We have a trial record of what evidence was submitted to the jury in support of that 14th Amendment claim. And on that record, were the officers entitled to qualified immunity? And I think what another critical point, as he points out, and I have no doubt, we will likely be up here again on the Fourth Amendment claim, but the issues that plaintiff has raised so far that are not at issue in this appeal, that will be the subject perhaps of an additional appeal, regarding segmentation in the Fourth Amendment claim and how that inquiry should have been sliced up and whether or not Judge Ludington ultimately instructed them or answered their questions correctly as to the right time period. That, even assuming that plaintiff is correct in that, that doesn't change the fact that the jury's finding. His argument doesn't go, or his Fourth Amendment issues don't go to whether or not Mr. Scazzari was armed. His arguments go to, because the jury found in finding no liability on the Fourth Amendment that at the time the officers used fatal force, he represented an imminent risk of serious physical harm either to the officers or to somebody else. They rejected the theory that he was not armed, that he didn't pose a risk of harm. Whether or not the events leading up to that and how big of a segment the jury should have been able to consider at the door prior to when Mijanowski met him in the woods, whatever that segment is, doesn't negate the fact that they found that he presented a risk of imminent harm at the time. But either way, in the sense that I can imagine the shooting was perfectly justified and nevertheless they were deliberately indifferent, or I could imagine that the shooting was wholly gratuitous, but nevertheless they weren't deliberately indifferent because, you know, whatever these other facts turn out differently. Well, I think that, yeah, I mean, the claims are independent in that regard, but I think, and I reference that with respect to the prior opinion that was saying the fact that they called out witnesses, they used some of this time, whatever it is, four, six, not sure, they used some of that time to call out witnesses for reasons unrelated to their duties because of the theory, plaintiff can go back and try and prove, that they didn't do that for a legitimate purpose of having witnesses view weapons at the time before it had been disturbed by MMR, before they had removed the weapons or handcuffed him. The plaintiff could prove that that was done because we were planting weapons, because he wasn't actually armed. That's my read of why it was sent back, or that was a theory in addition to the, which we haven't really touched on, the additional three minutes at the end. None of that got proven on this record. The fact that now plaintiff may try and create a new record that might actually sustain that is not really the issue. We're saying the issue that they put in, the case that they put in, the evidence that they put in that was submitted to the jury, that on that record with delay, there was no evidence of a 14th Amendment violation and in any event that it was not clearly established that what they were doing, viewed on that record and based on the conclusion of the jury's verdict, that that was, it was not clearly established. What do you think was used about the jury's verdict? It was a, the questions that were asked were not specific, right? I mean, wasn't the question simply whether his 14th Amendment right was violated? Correct. The question, the first verdict question was, did Officer Mijanowski and McGraw violate the Fourth Amendment right? If you answered yes, then there were a series of interrogatories. Okay, so, but part of that instruction included the proximate cause necessity, didn't it?  It did, it did. The instruction was, do you find that they had committed a 14th Amendment violation if you say yes or no? They answered no, so we never got to, how much delay do you find? So, but my question is, so they were, if, even if, based on that record, I think that we were entitled to a direct, which we moved for a direct avertive, based on the evidence that came in at trial, there was no evidence of a deliberate indifference to Mr. Scosari's medical needs. And that... You're saying without regard to the probable cause problem. Correct, correct. And I think that trying to uphold that... Approximate cause, Sarah. I'm having trouble understanding the significance of the verdict. That's my question. The verdict, what I think is significant for the medical needs claim is the verdict on the other claim. The verdict on the Fourth Amendment claim. Why is it significant? Because the question of fact identified by this court that plaintiffs could prove to establish deliberate indifference pertained to that their actions served no legitimate police-related function, what they were using this time for, there was no justification for, because if he wasn't armed, they were using that time, at least there was a suggestion, to go into the cabin and get weapons and do these sort of things. So using that period, that delay caused by that action, would be a deliberate indifference or could be established that. I'm saying that the finding of no Fourth Amendment violation... Means what? Gets rid of the theory that what they were doing, that their activities were, I think, blazingly or brazingly dilatory, whatever, that they served no legitimate purpose. They absolutely... It might not mean that even if he had weapons and they weren't planting them, they wanted these witnesses to cover their behind on that point, because even if it was a legitimate shooting, you might want to have more witnesses on your side. Sure, sure. But I think what a theory had been at the summary judgment stage was that this was being done, the time was being used to plant weapons and then to have people view them, and that did not get established at the trial, is my contention. So we would ask that the court reverse the denial of qualified immunity. Thank you, counsel. The case will be submitted. There being nothing further, you may adjourn the court.